**A.C. EXCAVATING; Brady & Son Bonded Roof Co.; NDF Company; Formex Concrete Forming, Inc.; Frank's Finish Grading, Inc.; Hesterly Holland Construction, LLC; K.J. Woodworks, Ltd.; Rocky Mountain Flatwork, Inc.; Stevens Excavating, Inc.; Watren Concrete Forming, Inc.; and Yeager Concrete Corporation, Petitioners,**

v.

**YACHT CLUB II HOMEOWNERS ASSOCIATION, INC.,**
Respondent.

No. 03SC842.

Supreme Court of Colorado,
En Banc.

June 27, 2005.

Harris, Karstaedt, Jamison & Powers, P.C., A. Peter Gregory, James G. Gaspich, Englewood, for Petitioners Brady & Son Bonded Roof Co.; Formex Concrete Form-ing, Inc.; Frank's Finish Grading, Inc.; Hesterly Holland Construction, LLC; and Watren Concrete Forming, Inc.

Messner & Reeves, LLC, Ryan A. Williams, John K. Shunk, Denver, for Petitioner A.C. Excavating.

Burg, Simpson, Eldridge, Hersh & Jardine, P.C., David K. TeSelle, Englewood, for Petitioner NDF Co.

Ray Lego & Associates, Janet S. Wells, Greenwood Village, for Petitioners K.J. Woodworks Ltd. and Rocky Mountain Flatwork, Inc.

Fowler, Schimberg & Flanagan, P.C., Daniel M. Fowler, Katherine Taylor Eubank, Steve Fox, Denver, for Petitioner Stevens Excavating, Inc.

Hall & Evans, LLC, Bruce A. Menk, Alan Epstein, Denver, for Petitioner Yeager Concrete Corp.

McKenzie Rhody, LLC, T. Cass McKenzie, Michael A. Hearn, Andrew M. Karr, Holland & Hart, LLP, Joseph W. Halpern, Teresa D. Locke, Denver, for Respondent Yacht Club II Homeowners Association, Inc.

Campbell, Latiolais & Ruebel, P.C., Jeffrey Clay Ruebel, Denver, Amicus Curiae for Colorado Defense Lawyers' Association.

Holme Roberts & Owen LLP, K. Preston Oade, Snell & Wilmer, LLP, Lee Mickus, Hale Friesen, LLP, Scott Eric Gessler, Denver, Amicus Curiae for Colorado Civil Justice League.

Vanatta, Sullan, Sandgrund and Sullan, P.C., Ronald M. Sandgrund, Greenwood Village, Amicus Curiae for Homeowners Against Deficient Dwellings.

Benson & Associates, P.C., Jesse Howard Witt, Golden, Amicus Curiae for Homeowners Against Deficient Dwellings.

MARTINEZ, Justice.

We granted certiorari to review the court of appeals' decision in *Yacht Club II Homeowners Ass'n., Inc. v. A.C. Excavating, et al.,* 94 P.3d 1177 (Colo.App.2003). In *Yacht Club II,* the court of appeals held that a homeowners association's negligence claim against construction subcontractors was not barred

by the economic loss rule. We agree with the court of appeals and hold, as a matter of law, that subcontractors owe homeowners a duty of care, independent of any contractual obligations, to act without negligence in the construction of a home. Accordingly, we find the economic loss rule has no application to the present case and therefore affirm the judgment of the court of appeals.

## I. Facts and Proceedings Below

Yacht Club II is a townhouse development (the development) that was constructed between 1994 and 1996. Respondents Yacht Club II Homeowners Association, Inc. (the Association) is comprised of and represents individual unit owners of the development. Petitioners are A.C. Excavating; Brady & Son Bonded Roof Co.; NDF Company; Formex Concrete Forming, Inc.; Frank's Finish Grading, Inc.; Hesterly Holland Construction, LLC; K.J. Woodworks, Ltd.; Rocky Mountain Flatwork, Inc.; Stevens Excavating, Inc.; Watren Concrete Forming, Inc.; and Yeager Concrete Corporation (collectively, the subcontractors). The subcontractors were involved in the construction of the development.

In 1998, the Association filed this action against the subcontractors, developer, and general contractor, alleging a host of construction defects including: improperly installed windows, roofs, chimneys, and doors; improperly braced roof trusses; improperly graded soils, reverse sloping driveways, and improper drainage systems resulting in water penetration, heaving front porches, heaving and cracking basement floors, damaged drywall, and water-stained sills, walls, carpets, and baseboards. The Association asserted against the developer and general contractor claims for breach of express and implied warranty, violation of the Colorado Consumer Protection Act, and negligence. The Association's suit against the subcontractors alleged only negligence.

The Association settled its claims with the developer and general contractor. Regarding the remaining negligence claim against the subcontractors, the trial court granted a motion for partial summary judgment in favor of the subcontractors, ruling that the Association lacked standing. The trial court also ruled that the Association's negligence claim was barred by the economic loss rule because the subcontractors' duties arose entirely out of the contracts between the subcontractors, the developer, and the general contractor. Finding that the subcontractors owed the Association no independent tort duty, the court entered judgment in favor of the subcontractors.

The Association appealed and the court of appeals reversed. The court of appeals first held that standing was conferred upon the Association by the Colorado Common Interest Ownership Act. Next, the court of appeals held that the economic loss rule had no application to the Association's negligence claim because subcontractors owe homeowners a duty of care, independent of any contract provision, in connection with the construction of homes. *Yacht Club II*, 94 P.3d at 1181. Citing our decision in *Cosmopolitan Homes v. Weller*, 663 P.2d 1041 (Colo.1983), the court of appeals reasoned that, independent of any contractual duty, builders also have a general duty imposed by law to act without negligence in the construction of homes. *Yacht Club II*, 94 P.3d at 1181. The court rejected the subcontractors' contention that our decision in *Town of Alma v. Azco Constr. Inc.*, 10 P.3d 1256 (Colo. 2000), bound the Association to the liability limitations agreed to by the subcontractors, the general contractor, and the developer, reasoning that the agreements could not be enforced against the Association because the Association had neither negotiated with the subcontractors, nor invoked the benefits of the subcontractors' agreements. *Yacht Club II*, 94 P.3d at 1182. Thus, the court of appeals concluded that the trial court erred in dismissing the claim based on the economic loss rule. *Id.* Thereafter, the subcontractors petitioned for certiorari and we granted review.

## II. Analysis

We granted certiorari to determine whether the economic loss rule as adopted in *Town of Alma* bars the Association's negligence

action against the subcontractors.[1] The Association argues that its claim is not barred by the economic loss rule because, pursuant to our decision in *Cosmopolitan Homes*, the law imposes a duty of care upon builders, independent of any contractual obligations, to build homes without negligence. The Association contends that in light of this independent tort duty, this case is beyond the scope of the economic loss rule. The subcontractors dispute this contention. Relying on our decision in *Town of Alma*, the subcontractors urge that the standard of care owed to the Association was defined solely by contract and notwithstanding our decision in *Cosmopolitan Homes*, subcontractors owe homeowners no independent duty of care. Reasoning that the Association seeks only economic damages sounding in tort where no such duty exists, the subcontractors maintain the claim is barred by the economic loss rule.

We conclude that the Association's negligence action is not barred by the economic loss rule. We begin our analysis by reviewing the purpose and application of the economic loss rule. We then revisit the two cases at issue here, *Cosmopolitan Homes* and *Town of Alma*, and examine why we permitted a negligence claim to proceed in the former case, but barred a negligence claim in the latter. We explain that in *Cosmopolitan Homes*, the negligence claim was predicated upon a duty of care that existed independently from any contractual duties, while in *Town of Alma*, the duties were prescribed solely by contract. We then reiterate that *Cosmopolitan Homes* is consistent with the economic loss rule as articulated in *Town of Alma* because both cases recognize that builders are under an independent duty of care to construct homes without negligence. After finding that the General Assembly's legislative enactments recognize this common law duty, we hold that subcontractors owe homeowners a duty of care, independent of any contractual obligations, to act without negligence in the construction of homes. Accordingly, we conclude that the economic loss rule has no application to this

case because the Association's negligence claim is based on a recognized independent duty of care.

## A. Standard of Review

 We review the trial court's grant of summary judgment de novo. *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 71 (Colo. 2004). Summary judgment is appropriate when the pleadings and supporting documents clearly demonstrate that no issues of material fact exist and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Cotter Corp. v. American Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo.2004). The nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini v. Smith*, 42 P.3d 629, 632 (Colo.2002); *HealthONE v. Rodriguez ex rel. Rodriguez*, 50 P.3d 879, 887 (Colo.2002).

## B. Economic Loss Rule

 The economic loss rule is intended to maintain the sometimes blurred boundary between tort law and contract law. *Town of Alma*, 10 P.3d at 1259; *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1269 (Colo.2000). Our formulation of the economic loss rule is that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law. *Grynberg*, 10 P.3d at 1269; *see also Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1301, 1303 (Colo.App.1988) (no cause of action lies in tort when purely economic damage is caused by negligent breach of a contractual duty). In distinguishing between a tort obligation and a contract obligation, it is essential to discern the source of the party's duty. *BRW*, 99 P.3d at 72; *Town of Alma*, 10 P.3d at 1262. Contract obligations arise from promises the parties have made to each oth-

1. We granted certiorari to consider:
 Whether the court of appeals erred in holding that the homeowners association's tort suit against the subcontractors alleging damages

related to construction negligence was not barred by the economic loss rule as adopted in *Town of Alma v. Azco Constr., Inc.*, 10 P.3d 1256 (Colo.2000).

er, while tort obligations generally arise from duties imposed by law to protect citizens from risk of physical harm or damage to their personal property. *BRW*, 99 P.3d at 72. Where there exists a duty of care independent of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent duty of care and thus falls outside the scope of the economic loss rule. *Town of Alma*, 10 P.3d at 1264.

This Court adopted the economic loss rule in *Town of Alma*. In that case, the town entered into a contract with a construction contractor to improve the town's water distribution system, but when the improvements were found to be defective, the town brought a negligence claim against the contractor. 10 P.3d at 1258. Applying the economic loss rule, we held that the town's negligence claim was barred because the claim was based solely on the breach of a contractual duty that resulted in purely economic loss. *Id.* at 1266.

■ Relying on our decision in *Town of Alma*, the subcontractors in the present case now assert that the Association's claim is similarly barred by the economic loss rule. The subcontractors argue that their standard of care was prescribed solely by the contractual obligations they assumed with the developer and general contractor and that no independent tort duty exists. Absent an independent tort duty, the subcontractors contend that the Association's claim is precluded by the economic loss rule. We disagree with this contention.

■ The existence and scope of a tort duty is a question of law to be determined by the court. *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 465 (Colo.2003). "The determination that a duty does or does not exist is 'an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is [or is not] entitled to protection.'" *Id.* (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 53 (5th ed.1984)).

Prior to our decision in *Town of Alma*, this Court recognized in *Cosmopolitan Homes* that builders have "[a]n obligation to act without negligence in the construction of a home [ ] independent of contractual obligations . . . ." 663 P.2d at 1042. *Cosmopolitan Homes* involved circumstances similar to those of the present case in that homeowners sought to recover for structural damages sustained to their house subsequent to purchasing it. *Id.* In an action against the builder, the homeowners alleged the damages were attributable to the builder's negligent design and construction of the house. *Id.* Asserting that the negligence claims were essentially implied warranty claims sounding in contract, the builder denied owing any duty to the homeowners, arguing that the homeowners' status as the fourth purchasers of the house precluded privity of contract. *Id.* We rejected this contention and held that "a negligence claim, not limited by privity of contract, may lie against a contractor [and] requires a builder to use reasonable care in the construction of a home . . . ." *Id.* at 1043.

Our decision in *Cosmopolitan Homes* permitted the homeowners' negligence claim to proceed because it was a based on a recognized independent duty of care requiring builders to construct homes without negligence. 663 P.2d at 1043. Because this duty exists independent of any contractual duties, *Cosmopolitan Homes* is consistent with the economic loss rule as we later adopted it in *Town of Alma*, where the economic loss rule operated to bar the town's negligence claim because it was premised solely upon contractual obligations and there existed no independent tort duty. *See Town of Alma*, 10 P.3d at 1264.

This distinction between the source of the duties in *Town of Alma* versus *Cosmopolitan Homes* was explicitly recognized in *Town of Alma* itself. In fact, we cited in *Town of Alma*, not only *Cosmopolitan Homes*, but two earlier cases as well, *Lembke Plumbing and Heating v. Hayutin*, 148 Colo. 334, 366 P.2d 673 (1961) and *Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313 (Colo. 1980), as examples of where the economic loss rule had no application because tort duties existed independent of any contractual obligations that may have existed. 10 P.3d at 1265–66.

In *Lembke*, we rejected the tortfeasor's contention that its contract barred the plaintiff's negligence claim, holding that although the contract contained all express or implied understandings, agreements and warranties, it was ineffective to abrogate the common law duty to exercise due care and the necessary degree of skill involved in a plumbing installation. 148 Colo. at 337, 366 P.2d at 675. Applying this same principle in *Metropolitan Gas*, we held that the existence of a contract between the parties did not transform the defendant's contractual obligation into the measure of its tort liability. 621 P.2d at 317. We reasoned that "contractual obligation is not the touchstone of civil liability in tort. It is only the matrix from which an independent tort obligation may arise." *Id.*

The rule of law established by *Cosmopolitan Homes, Lembke*, and *Metropolitan Gas* was not disturbed by our adoption of the economic loss rule because we specifically recognized that the economic loss rule has no application where a plaintiff's tort claim is based on an independent duty of care. *See Town of Alma,* 10 P.3d at 1263. Our discussion of these cases in *Town of Alma* was in direct response to the argument that *Cosmopolitan Homes, Lembke*, and *Metropolitan Gas* were inconsistent with the economic loss rule. *Id.* at 1265. We specifically addressed each case in turn, considered whether each case was consistent with the economic loss rule, and specifically concluded that there was no conflict with the economic loss rule because the negligence claim in each case arose from the breach of duties that were independent of the contract. *Id.*

For instance, we contrasted *Town of Alma* with *Lembke* and reasoned, "unlike in *Lembke,* no common law duty of care independent of the contract exists here." *Id.* With regards to *Metropolitan Gas*, we explained, "[w]e permitted the negligence action because we found that the repairman, working under a contract ..., had a duty of care independent of the contract to also inspect the safety valve on the boiler." *Id.* And concerning *Cosmopolitan Homes*, we said, "[w]e allowed the negligence claim ... because we determined that a builder has an independent duty to act without negligence in the construction of a home." *Id.* at 1266.

Because the economic loss rule has no application where there exists an independent duty of care, our resolution of *Cosmopolitan Homes, Lembke*, and *Metropolitan Gas* on the basis of such an independent duty portended our adoption of the economic loss rule in *Town of Alma.* Indeed, *Cosmopolitan Homes* specifically held that builders have an independent duty of care to act without negligence in the construction of homes. 663 P.2d at 1042; *see also Hoang v. Arbess,* 80 P.3d 863, 867 (Colo.App.2003) (relying on *Cosmopolitan Homes* for proposition that a builder has a duty to use reasonable care and skill in construction of a home, and failure to do so constitutes negligence); *Stiff v. BilDen Homes, Inc.,* 88 P.3d 639, 641 (Colo.App. 2003) (relying on *Cosmopolitan Homes* for proposition that economic loss rule will not bar a tort claim against a homebuilder because a homebuilder has an independent duty to act without negligence in the construction of a home). Accordingly, *Cosmopolitan Homes* and *Town of Alma* firmly establish that the economic loss rule does not apply to negligent construction claims against homebuilders because homebuilders have an independent duty of care to act without negligence in the construction of homes.

Yet even before *Town of Alma* and *Cosmopolitan Homes,* as early as 1978, the court of appeals recognized not only the existence of this duty, but also its application to subcontractors. *See Driscoll v. Columbia Realty-Woodland Park Co.,* 41 Colo.App. 453, 590 P.2d 73 (1978). In *Driscoll,* the plaintiff homebuyers entered into a contract with a realty firm and a general contractor to build a residential home. *Id.* at 454, 590 P.2d at 74. In turn, the firm and general contractor hired the defendant subcontractor to install the plumbing system. *Id.* When the system failed, the plaintiffs brought a negligence claim directly against the subcontractor. *Id.* Reversing the trial court's dismissal of the claim, the court of appeals held that the subcontractor was not insulated from liability by the lack of contractual privity between the plaintiffs and subcontractor, reasoning that

doing so would create "illogical and unjust exceptions to general negligence principles." *Id.* at 455, 590 P.2d at 74.

Subsequent to *Driscoll,* our decision in *Cosmopolitan Homes* implicitly recognized the court of appeals' application of the duty to subcontractors because nothing in the language of *Cosmopolitan Homes* indicates that a homebuilder's duty of care is restricted to general contractors or developers. In fact, although the "builders" in *Cosmopolitan Homes* were Cosmopolitan Homes, Inc., Hutchison Construction Co., and Builders Research and Engineering Co., we did not attempt to describe the relationship between those entities or the homeowners. Rather, we simply found that the duty was to be borne by all "builders." Indeed, *Cosmopolitan Homes* suggests that this duty is broadly shared by builders in general, not limited to the exclusion of subcontractors. The rationale underlying this policy was articulated in *Taco Bell, Inc. v. Lannon,* 744 P.2d 43 (Colo. 1987).

■ In *Taco Bell,* we formulated a nonexclusive list of factors courts ought to consider when determining whether a defendant owes a plaintiff a duty of care. 744 P.2d at 46. Included among such factors is the risk involved, the foreseeability and likelihood of injury as weighed against the social utility of the defendant's conduct, the magnitude of the burden of guarding against injury or harm, and the consequences of placing the burden upon the defendant. *Id.*

When we apply the *Taco Bell* factors to work performed by general contractors as opposed to subcontractors, we do not see how they could create an independent tort duty upon the former group of builders, but not the latter. Subcontractors are in as good or better position as general contractors to know whether their work is being properly performed because subcontractors will actually be performing the work. *See* Steven G.M. Stein, *Construction Law* § 3.01(2)(c) (1998). General contractors, on the other hand, are more involved in the area of management: estimating and bidding; negotiating contracts of labor, materials, equipment, and services; and scheduling, coordinating, managing, and supervising the work of its

subcontractors. *See id.* § 3.01(4)(d). In short, employing the *Taco Bell* factors does not result in significant distinction between subcontractors and general contractors or other builders in general. Therefore, the law in Colorado is and has been since 1978 that subcontractors and other builders are under an independent tort duty to act without negligence in the construction of homes.

Since *Driscoll* and *Cosmopolitan Homes,* the General Assembly has enacted or amended several statutes affecting the viability of tort claims against subcontractors. In so doing, the General Assembly has had numerous opportunities to eliminate the independent tort duty upon subcontractors, yet has never chosen to do so. Instead, the General Assembly has explicitly recognized that subcontractors are under an independent duty of care.

In 2001, the General Assembly enacted the Construction Defect Action Reform Act (CDARA) to "preserve adequate rights and remedies for property owners who bring and maintain [construction defect] actions." *See* Ch. 132, sec. 1, § 13–20–802, 2001 Colo. Sess. Laws 388, 388. The CDARA restricts negligent construction defect claims to those resulting in "[a]ctual damage to real or personal property" or "[a]ctual loss of the use of real or personal property." *See* § 13–20–804(a) and (b), C.R.S. (2004). Significantly, the CDARA expressly recognizes that subcontractors are among those construction professionals who are liable to property owners for negligent construction defects. *See* § 13–20–802.5(4), C.R.S. (2004) (defining "construction professional" as "an architect, contractor, *subcontractor,* developer, builder, builder vendor, engineer, or inspector ...." (emphasis added)); *see also* § 13–20–803(4), C.R.S. (2004) ("If a *subcontractor* ... is added as a party to an action under this section, the claimant making the claim against such *subcontractor* ... shall file with the court and serve on the defendant an initial list of construction defects ...." (emphasis added)). By prohibiting negligence claims against subcontractors when a subcontractor's negligence does not result in actual damage or loss of use to real or personal property, the General Assembly has recog-

nized the independent duty of care upon builders and subcontractors as articulated in *Cosmopolitan Homes* and *Driscoll.* Thus, the General Assembly has specifically recognized that negligence claims may be brought against subcontractors so long as a subcontractor's negligence results in actual damage or loss of use to real or personal property.

While the CDARA manifests the General Assembly's explicit recognition of subcontractors' independent tort duty, the General Assembly has impacted claims predicated on this duty on at least two other occasions since *Driscoll* without eliminating the duty of subcontractors. For example, in 1991, the General Assembly enacted the Colorado Common Interest Ownership Act (CCIOA). Ch. 283, sec. 1, § 38–33.3–101 to –319, 1991 Colo. Sess. Laws 1701, 1701–57. The CCIOA grants homeowners' associations standing to sue on behalf of property owners in such matters as construction defect claims. *See* § 38–33.3–102(b), C.R.S. (2004); Jerry C.M. Orten et al., *Colorado Common Interest Ownership Act,* 21 Colo. Law. 645, 653 (Apr.1992) (the CCIOA enables homeowner associations to represent homeowners more effectively in such matters as construction defect actions). Yet in enacting the CCIOA, the General Assembly did not prohibit homeowner association claims against subcontractors. Rather, the General Assembly allowed homeowner associations to bring construction defect claims against the same parties that a homeowner could claim against if the suit were brought by the homeowner individually. In so doing, the General Assembly created CCIOA claims that are controlled by the same statute of repose governing other construction defect actions against subcontractors, thereby implicitly recognizing that subcontractors could be liable in CCIOA negligent construction claims.

■ Section 13–80–104(1)(c)(I), C.R.S. (2004), establishes a six-year statute of repose for "any and all actions in tort, contract, indemnity or contribution" for "any deficiency in the design, planning ... [or] construction ... of any improvement to real property." In 1991, the court of appeals interpreted the predecessor statute to section 13–80–104 and determined that the statute applied to negligence claims brought against subcontractors. *See Sharp Bros. Contracting Co. v. Westvaco Corp.,* 817 P.2d 547, 549–51 (Colo.App.1991). Then, in 1996, the court of appeals interpreted section 13–80–104 itself and again found it applied to subcontractors. *See Two Denver Highlands Ltd. P'ship v. Dillingham Constr. N.A., Inc.,* 932 P.2d 827, 830 (Colo.App.1996). Subsequent to both decisions, the General Assembly amended section 13–80–104, but did not modify the effect of the decisions in *Sharp* or *Two Denver Highlands* applying the statute to subcontractors. *See* Ch. 132, sec. 2, § 13–80–104, 2001 Colo. Sess. Laws 388, 390. The legislature is presumed to be aware of the judicial precedent in an area of law when it legislates in that area. *People v. Swain,* 959 P.2d 426, 430–31 (Colo.1998); *Vaughan v. McMinn,* 945 P.2d 404, 409 (Colo.1997); *see also Resolution Trust Corp. v. Heiserman,* 898 P.2d 1049, 1054 (Colo.1995). Thus, by enacting the CCIOA and amending section 13–80–104, the General Assembly has implicitly recognized that subcontractors are under an independent duty of care to construct homes without negligence.

We interpret these legislative enactments as recognizing and accepting subcontractors' independent duty to act without negligence in the construction of homes. The General Assembly's actions are consistent with our holding in *Cosmopolitan Homes* permitting residential property owners to bring negligent construction claims against builders generally, as well as the court of appeals' holding in *Driscoll* specifically permitting residential property owners to bring negligence claims against subcontractors. The CDARA, the CCIOA, and section 13–80–104 were all enacted or amended subsequent to *Cosmopolitan Homes* and *Driscoll.* Had the General Assembly wished to abrogate *Cosmopolitan Homes* or *Driscoll,* it could have done so by expressly manifesting that intent. *See Vaughan,* 945 P.2d at 408; *Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo.1992) (General Assembly possesses the authority to abrogate common law remedies and, when it wishes to do so, it must manifest its intent either expressly or by clear implication). The General Assembly has manifested no such intent to abro-

gate or otherwise modify *Cosmopolitan Homes* or *Driscoll*. Instead, the General Assembly has tailored its legislative prescriptions to the principle that subcontractors must act without negligence in the construction of homes. Consequently, we hold that the economic loss rule has no application to negligent residential construction claims against subcontractors because subcontractors owe homeowners an independent duty of care to act without negligence in the construction of homes.

## C. Application

Applying the foregoing principles to the facts before us, we conclude that the Association's negligence claim is not barred by the economic loss rule. Though the subcontractors assumed contractual obligations with the developer and general contractor, these obligations did not and could not relieve the subcontractors of their independent duty to act without negligence in constructing the development. Whether the subcontractors breached that duty is a question left for a jury's determination. As the question is put to us, we find that the independent duty exists and places this case beyond the scope of the economic loss rule.

## III. Conclusion

We hold that the economic loss rule has no application to the present case because subcontractors owe homeowners a duty of care, independent of any contractual obligations, to act without negligence in the construction of homes. The judgment of the court of appeals is affirmed and the case is remanded for further proceedings.

Justice KOURLIS dissents and Justice COATS joins in the dissent.

Justice KOURLIS dissenting.

It is my view that since the economic loss suffered by the Homeowners' Association here arose out of express or implied contractual duties, the economic loss rule would bar the Association from asserting tort claims against the subcontractors. The majority avoids that conclusion by determining that *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo.1983), set forth an independent duty of a builder to use reasonable care in constructing a home and such duty binds subcontractors as well. I disagree. In my view, *Town of Alma* deferred to *Cosmopolitan Homes* by virtue of precedent, and as the majority acknowledges, extension of *Cosmopolitan Homes* should be measured against the economic loss rule as well as against precepts governing the creation of a new tort. However, I disagree that the application of those precepts yields the result the majority announces. Accordingly, I would reverse the court of appeals and respectfully dissent from the majority opinion.

## I. Discussion

What we are dealing with in this case is the assertion by the Homeowners' Association of tort claims for economic losses arising out of alleged breaches by the subcontractors in the construction of homes in the housing development. The trial court dismissed the claims against the subcontractors by operation of the economic loss rule, concluding that the duties of the subcontractors arose solely out of their contractual relationships with the developer and the general contractor. The court of appeals reinstated the claims, and the majority now affirms that outcome.

The economic loss rule, as adopted by this court, means that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." Maj. op. at 865 (citing *Town of Alma v. Azco Const., Inc.*, 10 P.3d 1256, 1264 (Colo.2000)). The rule is an attempt to adhere to the distinctions between contract law and tort law. As we noted in *Town of Alma*, "[a]s a general rule, no cause of action lies in tort when purely economic damage is caused by negligent breach of a contractual duty. This economic loss rule prevents recovery for negligence when the duty breached is a contractual duty and the harm incurred is the result of failure of the purpose of the contract." 10 P.3d at 1261, (citing *Jardel Enterprises, Inc. v. Triconsultants, Inc.*, 770 P.2d 1301, 1303 (Colo.App.1988)). We concluded in *Town of Alma* that the economic loss rule really

turned on an examination of the source of the duty between the parties: if the source of the duty was contractual, then only contractual remedies applied.

On the other hand, we carved out an exception to the rule contoured to circumstances "where we have recognized the existence of a duty *independent* of any contractual obligations. ..." *Id.* at 1263. We reaffirmed the test set out in *Taco Bell, Inc. v. Lannon*, 744 P.2d 43 (Colo.1987), as a means of determining the existence of such a duty of care independent of a contract. *Id.* Essentially, we declared in *Taco Bell* that whether the plaintiff's interest that has been infringed by the defendant deserves protection is dependent on a weighing of several factors. 744 P.2d at 46.

In *Town of Alma*, the Town sought damages for the cost of repair and replacement of water lines against Azco, a company hired by the Town to install a water system. We characterized the claim as an economic loss claim. *Town of Alma*, 10 P.3d at 1264. Then, applying the *Taco Bell* test to determine whether an independent duty of care would allow the plaintiffs to escape application of the economic loss rule, we concluded there was no such duty and upheld the trial court's dismissal of the Town's suit. *Id.* at 1265. The court should treat the claims here similarly.

### A. The pre-*Town of Alma* trilogy

In *Town of Alma*, we identified three cases in which we had reached different results under similar circumstances: *Lembke Plumbing and Heating v. Hayutin*, 148 Colo. 334, 366 P.2d 673 (1961); *Metropolitan Gas Repair Serv., Inc. v. Kulik*, 621 P.2d 313 (Colo.1980) and *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041 (Colo.1983). In my view, those cases can be analogized to large, venerable trees allowed to stand in the midst of a new thoroughfare—with the street constructed around them. They represent precedent, and must be honored— however, because they are inconsistent with the development of the law in this court and elsewhere, they must be limited to their facts and very narrowly construed.

*Lembke Plumbing* involved two negligence claims by homeowners against Lembke Plumbing, a company they had engaged to install plumbing pipelines and repair a heating system. 148 Colo. at 337, 366 P.2d at 675. Lembke's employees failed to protect the plumbing pipelines during installation, which resulted in a severed pipeline that caused severe flooding. Ultimately, the flooding even dislocated the house from its foundation. *Id.* In the second negligence suit, while repairing the plaintiffs' heating system, Lembke's employees stepped on and damaged a copper gauge tube, causing water to accumulate in a pit casing. *Id.* The defendant sought to avoid any liability by invoking the parties' agreement, which imposed no duty on Lembke to exercise due care and caution and the necessary degree of skill involved in a plumbing contract. *Id.* This court rejected the defendant's assertions, concluding that there was a common-law obligation to exercise due care under such circumstances. *Id.*

In *Metropolitan Gas*, the plaintiff brought a negligence suit against Metropolitan Gas for property damage resulting from an explosion of a gas operated boiler. 621 P.2d at 316. Metropolitan Gas had contracted with the plaintiff to perform repair work on the boiler. *Id.* The complaint alleged Metropolitan Gas was negligent in failing to discover a plugged or obstructed safety release valve during repair work on various occasions prior to the explosion. *Id.* We framed the issue as: whether the company's legal duty to the plaintiffs was restricted to its contractual obligations to install the motor pump and that function alone, or whether it extended to the exercise of reasonable care and skill in performing the job, including a safety inspection of the boiler system. *Id.* at 317 n. 6. We announced the now familiar precept that "[t]he contractual obligation is not the touchstone of civil liability in tort. It is only the matrix from which an independent tort obligation may arise." *See id.* at 317. We made clear that Metropolitan's service contract did not "transform Metropolitan's contractual obligation into the measure of its tort liability arising out of its contractual performance." *Id.* We applied the "matrix" rule, as in *Lemb-*

*ke Plumbing,* to a case involving physical injury or damage to other property as opposed to pure economic loss. In both cases, the plaintiffs sought damages for injuries that were outside the parameters of the contractual undertaking.

In 1983, this court decided *Cosmopolitan Homes.* In that case, we extended the principles enunciated in *Lembke Plumbing* and *Metropolitan Gas* to builders and contractors. The case would have been resolved differently if the economic loss rule were to have prevailed. To the contrary, we concluded that a builder or contractor should be "held to a standard of reasonable care in the conduct of its duties to the foreseeable users of the property." *Cosmopolitan Homes,* 663 P.2d at 1045. In arriving at that conclusion, the court undertook a policy analysis, akin to that later suggested in *Taco Bell,* and concluded that a builder-vendor is in a better position to identify defects; a buyer analyzes mostly cosmetic features; a home is someone's biggest investment; homes are likely to be resold a number of times to subsequent purchasers; and a latent defect would harm later purchasers as much as the initial purchaser. *See id.* The court confined the exception to the narrow context where the purchaser was unaware of latent defects at the time of purchase, reasoning that if a buyer knew of the deficiency, he could negotiate a lower price and should not then be allowed to assert a claim for negligence arising out of that defect. *Id.*

Even accepting the assumption that *Cosmopolitan Homes* removed the economic loss doctrine as a bar to negligence actions against builders and contractors, I cannot extend *Cosmopolitan Homes* to the facts of this case or to subcontractors in general.

### B. The CDARA

The majority relies on the Construction Defect Action Reform Act ("CDARA") for the proposition that "the General Assembly has explicitly recognized that subcontractors are under an *independent duty of care.*" Maj. op. at 868 (emphasis added). The Gen-

eral Assembly enacted CDARA in 2001,[1] and modified it in 2003, ("CDARA II")[2]. Relying on section 13–20–804 from CDARA II, the majority concludes, "CDARA restricts negligent construction defect claims to those resulting in 'actual damage to real or personal property' or 'actual loss of the use of real or personal property.'"

First and foremost, CDARA and CDARA II post-date the claims in this case. The question, it would seem, is whether there was an independent duty flowing from the subcontractors to the Homeowners' Association in 1998 when the claims arose—not whether there is such an independent duty now. The views of a subsequent general assembly cannot establish the intent of an earlier general assembly. *See State v. Nieto,* 993 P.2d 493, 504 n. 6 (Colo.2000); *Common Sense Alliance v. Davidson,* 995 P.2d 748, 763 (Colo. 2000); *see also* 1A Norman J. Singer, *Statutes and Statutory Construction* § 22:13 at 295 (Sixth ed. 2002 & Supp.2005) ("Subsequent legislation does not serve retroactively to amend legislation or declare the intent of a prior General Assembly.").

To the extent that CDARA and CDARA II can be some evidence of the General Assembly's understanding of whether or not subcontractors owe a duty in tort to residential home purchasers, I would note that the purpose of the legislation was to "decrease construction defect litigation, and reduce the costs of insuring construction professionals." Ronald M. Sandgrund and Scott F. Sullan, *The Construction Defect Action Reform Act of 2003,* 32 Colo. Law 7, 89 (2003). For example, CDARA I provided that no negligence claim seeking damages for a construction defect would lie if the claim arose from the failure to construct the property in substantial compliance with an applicable building code or industry standard, unless such failure causes: (1) actual *or probable* damage to real or personal property; (2) actual *or probable* loss of the use of real or personal property; (3) bodily injury or wrongful death; or (4) a risk of bodily injury or death to, or threat to the life, health, or safety of, the occupants of the residential

---

1. Ch. 132, sec. 1, § 13–20–804, 2001 Colo. Sess. Laws 388, 389–90.

2. Ch. 183, sec. 5, § 13–20–804, 2003 Colo. Sess. Laws. 1361, 1363.

real property. *See* § 13–20–804, 5 C.R.S. (2001) (emphasis added). In 2003, the General Assembly amended the section to delete "or probable", *see* section 13–20–804(1)(a)–(d), thereby further limiting the exposure.

The statute cannot be read as creating or acknowledging an independent duty of care on the part of subcontractors. To the contrary, the statute creates a limitation on negligence claims in light of leading decisions handed down in Colorado and California relating to the "economic loss" and "independent duty" doctrines. *See* Ronald M. Sandgrund & Scott F. Sullan, *The Construction Defect Action Reform Act,* 30 Colo. Law. 121 (2001). According to Sandgrund and Sullan, the provision arose out of the concern that some multi-family construction defect negligence claims were grounded on what was perceived to be purely "technical" building code violations that gave rise to nothing other than speculative issues of injury, damage, or loss. *Id.* They cited evidence that expensive litigation was being initiated over mere technical code violations. *Id.*

In total, the statute cannot bolster the creation of a subcontractor's broad "independent duty of care." Rather, the statute is "narrowly focused on claims where the only asserted wrong is the negligent violation of a building code with no actual, probable, or threat of injury or loss." *Colorado Bar Association: Practitioner's guide to Colorado Construction Law* § 14.2.2 (Robert Benson ed., 2003) (hereinafter *"CBA Practitioner's Guide"*). Even if the General Assembly intended to include "subcontractors" within the general ambit of the statute, that conclusion, in my view, would necessarily lead the court to conclude that the General Assembly is interested in limiting the liability of construction professionals—not extending it.[3] Accordingly, neither our case law nor statutory enactments support the existence of an independent duty, and the duty is thus a new one that, measured against the standard we set forth in *Taco Bell,* cannot be justified.

### C. *Taco Bell* standard applied to subcontractors

In this case, the plaintiff wishes to assert a construction defect action against subcontractors who performed work in the construction of a townhouse development. The parties admit that the damages alleged by the plaintiffs are limited to damage to the specific property the defendants contracted to construct. The general contractor and subcontractors' agreement contains the subcontractors' guarantee "to perform the work in an efficient, good and workmanlike manner, according to the highest standards, customs, and practices in the land development industry, to·meet governmental rules, regulations and requirements." The plaintiff is a third party beneficiary of that contract. *See Jardel Enterprises,* 770 P.2d at 1304 (the economic loss rule applies whether the plaintiff is a party to the contract or a third-party beneficiary of the contract). Accordingly, the economic loss rule applies: the duty is founded in contract, and the damages are purely economic.

In *Taco Bell,* we directed that in weighing whether or not to recognize an independent duty of care, the court should evaluate five factors: (1) risk involved; (2) foreseeability; (3) likelihood of injury as weighed against the social utility of the actor's conduct; (4) the magnitude of the burden of guarding against the injury and (5) the consequences of placing that burden on the defendant. 744 P.2d at 46. Foreseeability is a necessary, but not sufficient, component. *See* 7 John W. Grund et al., *Colorado Practice Series* § 10.5 (West 2005) (citing *University of Denver v. Whitlock,* 744 P.2d 54 (Colo.1987)). In fact, we cautioned in *Taco Bell* that "no one factor is controlling and whether a duty should be imposed in a particular case is essentially [a question] of fairness under contemporary standards—whether a reasonable person would recognize a duty and agree that it exists." *Id.* Recognizing the social utility of imposing such a duty on the builder-vendor,

---

**3.** The statute makes clear its purpose to curtail ordinary negligence claims by stating in the next paragraph that nothing in the building code provision shall be construed as limiting claims for *tort other than negligence* (example, intentional torts such as fraud or misrepresentation); contract or warranty claims; or claims that arise from the violation of any statute or ordinance other than claims for violation of a building code. *See* § 13–20–804(2)(a)–(d).

as we did in *Cosmopolitan Homes*, has little bearing on the analysis here. The subcontractor does not negotiate the contract with the purchaser. Instead, the subcontractor is "one who has entered into a contract, expressed or implied, for the performance of an act with the person who has already contracted for its performance." *See CBA Practitioner's Guide, supra*, at § 11.1.1. Thus, the subcontractor is a party awarded a portion of an *existing* contract by a general contractor. *See Black's Law Dictionary* 1437 (Seventh ed.1999). General contractors understand and appreciate the entire project for which they have hired subcontractors. They are in a far better position to assess the various risks posed by the work of subcontractors, especially in circumstances such as presented here, where each subcontractor performed separate portions of the work necessary to complete the construction. The general contractor has a duty of oversight for the whole project and a working familiarity with the plans for the whole project; a subcontractor has no such duty and no such knowledge. The general contractor deals with the prospective purchaser; the subcontractor may not. The general contractor is usually a larger company, with more resources and a more extensive reputation; subcontractors may be small sole proprietors as often as large companies.

The consequences of placing on the subcontractor the burden of guarding against risk that already lies with the general contractor is of slight benefit. At minimum, subcontractors will now be forced to second-guess the decisions of a general contractor in an effort to protect against suits for ordinary negligence—and to insure against those risks. Such a result certainly does nothing more than increase costs of homebuilding. Most importantly, we are not faced here with a situation such as that in *Cosmopolitan Homes* where but for the rule we fashioned, subsequent buyers would have no recourse against builder-venders for latent defects. Here, the plaintiff has already recovered from the general contractor and the developer. In sum, there is an insufficient basis, under the *Taco Bell* analysis, to justify the imposition of an independent duty of care running from the subcontractors to the Homeowners' Association.

## II. Conclusion

Because our cases do not create an exception to the economic loss doctrine on behalf of homebuyers against subcontractors; and because the circumstances do not give rise to the creation of a new independent duty of care by subcontractors, I respectfully disagree with the majority's assertion to the contrary. I would reverse the court of appeals' decision and remand with instructions to reinstate the dismissal of the plaintiff's suit.

I am authorized to state that Justice COATS joins in the dissent.