**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 23, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

FIDELITY NATIONAL TITLE
INSURANCE COMPANY, a California
corporation,

      Plaintiff - Appellee,

v.

PITKIN COUNTY TITLE, INC.,

      Defendant - Appellant.

No. 18-1128
(D.C. No. 1:12-CV-03077-RM-KLM)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **O'BRIEN**, and **CARSON**, Circuit Judges.
_____

Pitkin County Title, Inc. (Pitkin) appeals from a summary judgment entered in

favor of Fidelity National Title Insurance Co. (Fidelity) on Fidelity's breach of contract

claim. It also appeals from the denial of its motion to alter or amend the judgment under

Fed. R. Civ. P. 59(e). We affirm.[1]

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] Our jurisdiction derives from 28 U.S.C. § 1291.

I

This case presents a title insurance dispute involving real property located in Aspen, Colorado. The property was purchased by Preston and Betty Henn; title was insured by a policy issued by Pitkin and underwritten by Fidelity. An agency agreement authorized Pitkin to sell and issue Fidelity's title insurance policies consistent with its terms. Fidelity's policies ordinarily excluded coverage for easements or claims of easements, but the policy issued by Pitkin to the Henns deleted that and other exceptions. Consequently, the Henns' policy committed Fidelity to extended coverage for unrecorded easements on the property.

As it happens, the Henns became embroiled in a dispute over a neighbor's use of a footpath across their insured property. The neighbor brought a quiet title action against the Henns in state court, resulting in a prescriptive easement on the property. Although the Henns sought defense and indemnification from Fidelity, Fidelity denied coverage. It later acknowledged that some of the neighbor's claims were covered, but the Henns rejected Fidelity's partial coverage offer and commenced this suit in federal court, asserting claims for breach of contract and bad faith failure to defend.

Several months later, Fidelity filed a third-party complaint against Pitkin. Count one claimed Pitkin was negligent in issuing the policy to the Henns with four exceptions deleted, in particular the exception for unrecorded easements. Count two claimed Pitkin breached its agency agreement with Fidelity by deleting the four exceptions from the Henns' policy without first obtaining written authorization from Fidelity, as required by the agency agreement. The district court consolidated the cases, and the Henns

2

eventually settled with Fidelity, leaving Fidelity's two claims against Pitkin. Fidelity later stipulated to the dismissal of its negligence claim, leaving only its breach of contract claim against Pitkin.

On cross motions for summary judgment, the district judge decided Pitkin breached the agency agreement and, moreover, it was liable to Fidelity for the full amount of the loss because "Pitkin was negligent in its breach of the Agreement," Aplt. App., Vol. VI at 74. In allocating the full loss to Pitkin, the district court applied the relevant provisions of the agency agreement, which required Pitkin to reimburse Fidelity for the entire amount of a loss arising from Pitkin's "negligent, willful or reckless conduct." *Id.*, Vol. III at 90.

In response, Pitkin moved to alter or amend its judgment under Fed. R. Civ. P. 59(e). Without disputing its breach of the agency agreement, it claimed the entire loss ought not have been assigned to it because 1) Fidelity had already stipulated to the dismissal of its negligence claim, 2) Fidelity neither pleaded nor established the elements of negligence, and 3) the issue of negligence was barred by Colorado's economic loss rule, which generally bars tort claims for economic losses arising from contractual duties absent an independent duty of care, *see Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1264 (Colo. 2000) (en banc). The district judge rejected the arguments because negligence remained an issue within the context of Fidelity's breach of contract claim, the dismissal of Fidelity's negligence claim notwithstanding. Moreover, Pitkin failed to preserve its economic loss theory in its summary judgment briefs, but even if the theory were to be considered nothing prevented the application of a contractually agreed upon

3

standard of liability—negligence—in allocating the full loss to Pitkin. Aplt. App., Vol. VI at 141-42. The judge thus denied relief under Rule 59(e), and Pitkin appealed.

II

"We review the district court's grant of summary judgment de novo," *SCO Grp., Inc. v. Novell, Inc.*, 578 F.3d 1201, 1208 (10th Cir. 2009), and its "ruling on a Rule 59(e) motion for abuse of discretion," *Hayes Family Tr. v. State Farm Fire & Cas. Co.*, 845 F.3d 997, 1004 (10th Cir. 2017). To the extent Pitkin challenges the judge's interpretation of the agency agreement, we apply Colorado law under a de novo standard of review. *See Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1017-18 (10th Cir. 2018) ("Under Colorado law, 'contract interpretation is a question of law for the court to decide.'") (quoting *Copper Mountain, Inc. v. Indus. Sys., Inc.*, 208 P.3d 692, 696 (Colo. 2009) (en banc)) (brackets omitted)); *see also Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1236 & n.7 (10th Cir. 2014) (applying state law in diversity action).

We begin with the relevant provisions of the agency agreement: Pitkin "shall not, without the prior written approval of [Fidelity's] corporate underwriting department . . . [c]ommit [Fidelity] to insure any Extra Hazardous Risk as defined herein," or "[a]lter any Title Assurance or other form furnished by [Fidelity] . . . ." Aplt. App., Vol. III at 89. "Extra Hazardous Risk" is defined as "all risks which result in a liability not normally assumed by [Fidelity]." *Id.* at 92. The title insurance forms Fidelity provided to Pitkin included Schedule B, which contained standard Policy Exceptions 1, 2, 3, and 4. *Id.* at 219 (Flores Aff. ¶ 7). Policies issued without these exceptions "exposed Fidelity to

4

greater risk, including claims for off-record matters like easements and encroachments."

*Id.* (Flores Aff. ¶ 8). Exception number 2 expressly excluded coverage for "[e]asements, or claims of easements, not shown by the public records." *Id.* at 216. But Schedule B in the Henns' policy stated, "EXCEPTIONS NUMBERED 1, 2, 3 AND 4 ARE HEREBY DELETED." *Id.* at 217.

Pitkin does not deny its breach of the agreement. Instead, it focuses on the judge's interpretation of the loss and allocation of loss provisions. The agreement defines "Loss" as:

> sums paid or to be paid by [Fidelity] . . . to settle or compromise claims under any of [Fidelity's] Title Assurances issued by [Pitkin]. Loss shall include, but not be limited to, expenses, costs and attorney's fees actually paid or incurred in connection with investigation, negotiation, litigation, or settlement of such claim which ultimately requires payment of any sum by [Fidelity].

*Id.* at 92. Subject to subparagraph 6.B of the agreement, Pitkin's "General Liability" was capped at "the first $5,000.00 of any Loss sustained or incurred by [Fidelity] as a result of the issuance of the Title Assurances by [Pitkin]." *Id.* at 93. But under subparagraph 6.B, entitled, "ALLOCATION OF LOSSES," Pitkin was liable for the entire loss incurred as a result of its negligent, willful, or reckless conduct:

> In the event that a Loss sustained or incurred for a matter arising under this Agreement resulted or arose from the negligent, willful or reckless conduct of [Pitkin], [Pitkin]'s employees or any independent contractor relied upon by [Pitkin], then [Pitkin] shall reimburse [Fidelity] for the Loss. The instances where [Pitkin] shall be liable to [Fidelity] under this subparagraph shall include, without limitation, the following:
>
> 1. Failure of [Pitkin] to comply with the terms and conditions of this Agreement or with the manuals, underwriting bulletins and/or instructions given to [Pitkin] by [Fidelity].

5

*Id.* at 90.

Applying this provision, the judge's summary judgment discussion concluded "Pitkin was negligent in its breach of the Agreement," *id.*, Vol. VI at 74, and therefore was liable for the entire loss. Pitkin here offers four arguments to the contrary.

First, it contends negligence is foreclosed by the economic loss rule: "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 865 (Colo. 2005) (en banc). There are three main policy reasons for applying the economic loss rule between commercial parties:

> (1) to maintain a distinction between contract and tort law; (2) to enforce expectancy interests of the parties so that they can reliably allocate risks and costs during their bargaining; and (3) to encourage the parties to build the cost considerations into the contract because they will not be able to recover economic damages in tort.

*Spring Creek Expl. & Prod.*, 887 F.3d at 1020 (quoting *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004)).

Fidelity stipulated to the dismissal of its negligence claim precisely because it was barred by the economic loss rule. *See* Aplt. App., Vol. IV at 17. Following through, Pitkin tells us parties may not incorporate a negligence standard into their contract. But Colorado courts have recognized that "sophisticated parties can build the anticipated cost of a breach of their respective duties into their bargain," *A Good Time Rental, LLC v. First Am. Title Agency*, 259 P.3d 534, 537 (Colo. App. 2011), and generally may

6

incorporate tort standards into their contract, *see, e.g.*, *BRW, Inc.*, 99 P.3d at 74-75 (holding that economic loss rule barred negligence claims because duty to perform in a non-negligent manner was provided for by contract). It points to an exception to the economic loss rule, one which allows a tort claim alleging breach of a duty independent of a contract. *See A.C. Excavating*, 114 P.3d at 865. Pitkin asserts this exception precludes a finding of negligence here because "[n]egligence must be based on breach of a duty independent of a contract." Aplt. Br. at 16. But conspicuously missing from this tangled argument is any acknowledgement that *there is no tort claim here*. Nor does Pitkin explain how applying an exception to the economic loss rule, which would *permit* an independent negligence claim, helps its cause.

Pitkin's second argument is equally flawed. It asserts the dismissal of Fidelity's negligence claim precludes consideration of its negligence, even for purposes of applying the allocation of loss provision to resolve this breach of contract claim. It characterizes this argument as a procedural bar, akin to collateral estoppel, but once again, this argument distorts the economic loss rule and frustrates the contractual intent of the parties. In Colorado, the economic loss rule applies unless a duty of care is imposed by tort law, independent of contractual obligations. The rule and exception are distinct and ought not be conflated. Fidelity's dismissal of its negligence claim under the economic loss rule is not a procedural bar to enforcement of the allocation of loss provisions contained in the agency agreement. Pitkin would have us apply the economic loss rule to bar recovery—not only as to a negligence claim—but also as to the express contract provisions. It cites no authority for such a dubious application of the economic loss rule.

7

Moreover, it does not deny it agreed (under subparagraph 6.B) to be liable for the entire loss resulting from its negligent, willful or reckless conduct. Even if there was no independent tort (alleged or not) the language of the contract dictates the remedy. At bottom, Pitkin asks us to ignore the parties' expressly manifested intent. *See Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1313 (Colo. 1984) (en banc) ("An integrated contract in the first instance is to be interpreted in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless.").

Third, Pitkin contends Fidelity waived the issue of negligence by failing to plead and establish the elements of a negligence claim in its summary judgment briefs. This argument again conflates the dismissed negligence claim with the agreed contract remedy for a loss resulting from the "negligent, willful or reckless conduct of [Pitkin]," which is expressly identified as the "[f]ailure of [Pitkin] to comply with the terms and conditions of this Agreement or with the manuals, underwriting bulletins and/or instructions given to [Pitkin] by [Fidelity]." Aplt. App., Vol. III at 90.[2]

---

[2] The district court declined to apply this definition of "negligent, willful or reckless conduct" and instead applied a definition of "negligence" contained in Colorado's civil jury instructions. In its reply brief, Pitkin objects to revisiting the district court's construction of the agreement, asserting Fidelity did not challenge it. But, as Pitkin acknowledges, we review the district court's interpretation de novo. *See Spring Creek Expl. & Prod. Co. v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1017-18 (10th Cir. 2018). Moreover, it does not contend the agency agreement is ambiguous, nor does it explain why we should not apply its plain terms.

Finally, Pitkin contends it is not responsible for the entire loss because Fidelity paid the Henns to settle its own claims, not necessarily a claim arising under the policy. The undisputed evidence indicates otherwise. Fidelity provided evidence demonstrating its settlement with the Henns consisted of payments for attorney's fees and the diminution of their property value resulting from the easement. *See id.*, Vol. III at 210 (Nygaard Aff. ¶¶ 14-15). These were "sums paid . . . by [Fidelity] . . . to settle or compromise claims under any of [Fidelity's] Title Assurances issued by [Pitkin]." *Id*. at 92. Thus, the entire settlement amount qualifies as a "Loss" under the agency agreement, and Pitkin was obligated to reimburse Fidelity for that loss.

### III

The judgment of the district court is affirmed. Pitkin's motion to seal Volume VII of the appendix is granted, subject to its correction of an apparent filing error. Volume VII contains a redacted version of Pitkin's amended statement of undisputed facts. *See* Aplt. App., Vol. VII at 87-88. This document was not included elsewhere in the appendix. Accordingly, Pitkin shall supplement the appendix with a publicly available redacted version of this document and an unredacted version filed under seal. *See* 10th Cir. R. 25.6(B).

Entered for the Court

Terrence L. O'Brien
Circuit Judge

9