2015 CO 7

S K PEIGHTAL ENGINEERS, LTD, a Colorado corporation; Hepworth–Pawlak Geotechnical, Inc., a Colorado corporation; Steve Pawlak; and Daniel E. Hardin, Petitioners,

v.

MID VALLEY REAL ESTATE SOLUTIONS V, LLC, a Colorado limited liability company, Respondent.

Supreme Court Case No. 13SC728

Supreme Court of Colorado.

February 9, 2015

Attorneys for Petitioner S K Peightal Engineers, LTD: Montgomery Little & Soran, P.C., John R. Riley, Echo D. Ryan, Shawn A. Eady Greenwood Village, Colorado.

Attorneys for Petitioners Hepworth–Pawlak Geotechnical, Inc.; Steve Pawlak; and Daniel E. Hardin: Cardi, Schulte & Ford, LLC, Andrew S. Ford, Daniel V. Woodward, Greenwood Village, Colorado.

Attorneys for Respondent Mid Valley Real Estate Solutions V, LLC: Garfield & Hecht, P.C., David L. Lenyo, Chad J. Schmit, Avery A. Simpson, Aspen, Colorado, Dean Neuwirth P.C., Dean Neuwirth, Denver, Colorado.

Attorneys for Amici Curiae American Council of Engineering Companies of Colorado, American Institute of Architects of Colorado, Structural Engineers Association of Colorado, and Colorado Association of Geotechnical Engineers: Cardi, Schulte & Ford, LLC, Philip B. Cardi, Greenwood Village, Colorado.

Attorneys for Amicus Curiae Colorado Defense Lawyers Association: Ruebel & Quillen, Jeffrey Clay Ruebel, Westminster, Colorado, Lambdin & Chaney, LLP, Gregg S. Rich, Denver, Colorado.

Attorneys for Amicus Curiae Independent Bankers of Colorado: Bieging Shapiro & Barber LLP, John E. Burrus, Tracy A. Davis, Denver, Colorado.

Attorneys for Amicus Curiae Colorado Trial Lawyers Association: The Witt Law Firm, Jesse Howard Witt, Denver, Colorado.

CHIEF JUSTICE RICE delivered the Opinion of the Court.

¶ 1 Petitioners have requested that we review two issues arising from the court of appeals' opinion issued on interlocutory appeal under C.A.R. 4.2. We must decide: (1) whether entities that did not exist at the time the relevant contracts were completed can still be subject to the economic loss rule through the interrelated contracts doctrine; and (2) whether commercial entities situated similarly to Respondent, which was a third-party beneficiary to a contract that interrelated to the contract by which the home at issue was built, are among the class of plaintiffs entitled to the protections of the independent tort duty to act without negligence owed by construction professionals to subsequent homeowners when constructing residential homes.[1] We hold that (1) the fact that an entity was nonexistent at the time the relevant contracts were completed does not alter our analysis under the interrelated contracts doctrine, and (2) the independent duty at issue does not apply here because, as a third-party beneficiary of a commercially negotiated contract that interrelates to the contract under which the home was built, Respondent cannot properly be considered a subsequent homeowner.

## I. Facts and Procedural History

¶ 2 This case arises out of a series of contracts surrounding the construction of a "spec" home. Petitioners are soil engineer-

---

1. Specifically, we granted certiorari on the following two issues:

   1. [REFRAMED] Whether the economic loss rule bars a homeowner's negligence claim against a construction professional when the owner is a commercial entity rather than a natural homebuyer.

2. [REFRAMED] Whether the interrelated contract doctrine as defined in BRW, Inc. v. Dufficy & Sons, Inc., 99 P.3d 66 (Colo. 2004), can apply to a wholly-owned subsidiary that did not exist when the initial contracts were drafted but instead was created after work on the relevant contracts had been completed.

ing corporations that subcontracted with developer Sun Mountain Enterprises LLC ("Sun Mountain") to perform soil analysis and soil engineering for the construction of a home. Petitioner S K Peightal Engineers LTD ("S K Peightal") entered an oral contract with general contractor Shannon Custom Homes;[2] whether this contract contained an explicit duty of care is disputed. Meanwhile, Petitioner Hepworth–Pawlak Geotechnical Inc. ("H–P Geotech")[3] entered into a written contract with Sun Mountain containing a duty provision requiring H–P Geotech to conduct all services "in a manner consistent with that level of care and skill ordinarily exercised by members of the profession currently practicing under similar conditions in the same locale."

¶ 3 Sun Mountain planned on constructing the home and selling it on the open market, and it secured financing for the project through three intertwined construction loan agreements with Alpine Bank, the most central of which was executed in April of 2007 (the "Construction Loan Contract"). Before the home reached the market, the Great Recession struck. The home sat unsold until the Construction Loan Contract matured and came due, at which point Sun Mountain and Alpine Bank entered into a contract titled "Agreement for Deed-in-Lieu of Foreclosure" ("Deed-in-Lieu"). This contract released Sun Mountain's personal guarantors from liability under the Construction Loan Contract in exchange for Alpine Bank receiving the deed to the house and a lump-sum payment of the difference between the home's appraised value and the remaining indebtedness due on the Construction Loan Contract. Alpine Bank did not take title to the home directly but rather created a wholly owned subsidiary—Respondent Mid Valley Real Estate Solutions V, LLC ("Mid Val-

ley")—to take title to the property under the Deed-in-Lieu.[4]

¶ 4 After Mid Valley took possession under the Deed-in-Lieu and placed the home on the market, large cracks formed in the walls of the home as a result of settling soil beneath the home's foundation. Mid Valley sued Petitioners[5] for purely economic damages under a negligence theory for "breach[ing] their duties and applicable standard of care in providing soils and other engineering services and/or design services for the ... Home." Petitioners moved for summary judgment under the economic loss rule, asserting that Mid Valley was contractually interrelated through the Deed-in-Lieu and the Construction Loan Contract to the duty provisions contained in Petitioners' contracts with Sun Mountain, and thus that Mid Valley was barred from asserting a tort claim for its economic loss. The trial court rejected Petitioners' summary judgment motion, finding that Mid Valley did not have a contract with anyone involved in the construction project. Petitioners then requested interlocutory review by the court of appeals under C.A.R. 4.2, which was granted.

¶ 5 The court of appeals affirmed the trial court's denial of summary judgment on different grounds. *Mid Valley Real Estate Solutions V, LLC v. Hepworth–Pawlak Geotechnical, Inc.*, 2013 COA 119, ¶ 3, 343 P.3d 987. Largely avoiding the question of whether the contracts were interrelated, it held that Petitioners as subcontractors owed the same independent duty in the construction of a residential home to Mid Valley as they would to any natural home buyer, and thus that the economic loss rule did not apply to bar Mid Valley from suing Petitioners in tort. *Id.* We then granted certiorari to

---

2. Because Shannon Meckley was the principal for both Shannon Custom Homes as general contractor and Sun Mountain as developer, these two corporations presumably had a contractual agreement of some kind as well. This contract, however, is not presented in the sparse record before us.

3. Petitioners also include two principals of H–P Geotech; these individuals have made no arguments beyond those included in H–P Geotech's briefs.

4. Mid Valley's amicus, Independent Bankers of Colorado, informs us that such arrangements are common in deed-in-lieu-of-foreclosure agreements.

5. Mid Valley and Alpine Bank actually sued several parties, including Petitioners here. Over the course of the proceedings below, all parties but Mid Valley and Petitioners have either settled or been otherwise dismissed.

determine whether (1) the independent duty in construction of a residential home applies to a commercial homeowner in Mid Valley's position, and (2) the contracts could be interrelated despite Mid Valley not existing at the time Petitioners' contracts were formed.

## II. Standard of Review

¶ 6 We review the court of appeals' affirmation of the trial court's denial of a motion for summary judgment de novo. *Pierson v. Black Canyon Aggregates, Inc.*, 48 P.3d 1215, 1218 (Colo. 2002). Summary judgment is only appropriate when the pleadings and supporting documents confirm that no issues of material fact exist and that the moving party is entitled to judgment as a matter of law. *A.C. Excavating v. Yacht Club II Homeowners Ass'n*, 114 P.3d 862, 865 (Colo. 2005). All doubts regarding the existence of a triable issue of fact must be resolved against the moving party, and the nonmoving party is entitled to all favorable inferences that may be drawn from the undisputed facts. *Id.*

## III. Analysis

¶ 7 Petitioners assert that the court of appeals erred in upholding the trial court's denial of their motions for summary judgment on Mid Valley's tort claims based on the economic loss rule. The economic loss rule was adopted "to maintain the boundary between contract law and tort law," *Town of Alma v. AZCO Constr., Inc.*, 10 P.3d 1256, 1259 (Colo. 2000), and focuses on the source of the duty that the defendant allegedly breached, *id.* at 1262. "A breach of a duty which arises under the provisions of a contract between the parties must be redressed under contract, and a tort action will not lie." *Id.* If, however, the duty breached arises "*independently* of any contract duties between the parties," then a tort action premised on that breach remains viable. *Id.* This rule applies not only in the context of a single contract, but also "when the claimant seeks to remedy only an economic loss that arises from interrelated contracts." *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 72 (Colo. 2004). Furthermore, the economic loss rule applies not only to parties to a contract that defines the duty of care, but also to "third-party contract beneficiaries who may have a cause of action for breach of contractual duties." *Town of Alma*, 10 P.3d at 1264 n.12. A third-party beneficiary is a "person not a party to an express contract [who nevertheless] may bring an action on the contract if the parties to the agreement intended to benefit the [third party and if] ... the benefit claimed is a direct and not merely an incidental benefit of the contract." *See Parrish Chiropractic Ctrs., P.C. v. Progressive Cas. Ins. Co.*, 874 P.2d 1049, 1056 (Colo. 1994).

¶ 8 Therefore, absent an independent tort duty, a plaintiff is generally barred from suing in tort if (1) the plaintiff seeks redress for breach of a contractual duty that caused only economic losses, (2) the plaintiff is a party to a contract or a third-party beneficiary of a contract as defined above, and (3) that contract defines the duty of care that the defendant allegedly violated or is interrelated with another contract that defines that duty of care.

¶ 9 If, however, the defendant owes a duty of care to the plaintiff *independent* from the duty contained in the interrelated contracts, then the plaintiff may still sue in tort for violation of that independent duty. In *Cosmopolitan Homes, Inc. v. Weller*, 663 P.2d 1041, 1043–45 (Colo. 1983), we recognized an independent duty owed by builders "to use reasonable care in the construction of a home in light of the apparent risk" that extends to "subsequent purchasers" of the home. Then, in *Town of Alma*, we reaffirmed this independent duty as compatible with our adoption of the economic loss rule, 10 P.3d at 1265, and in *A.C. Excavating*, we recognized that this duty to "act without negligence in the construction of a home" extends to subcontractors, 114 P.3d at 864.

¶ 10 Against this backdrop, we now set about clarifying (1) whether this independent duty extends to protect commercial entities in Mid Valley's position, and (2) whether the interrelated contracts doctrine can apply to entities that were formed after the contract containing the duty was executed. We conclude that (1) the economic loss rule can apply even to entities that did not exist at the

time that the contract containing the duty was formed if that entity is a party to or third-party beneficiary of the contract (or an interrelated contract); and (2) the *Cosmopolitan Homes* independent duty does not apply here because, as a third-party beneficiary of a commercially negotiated contract that interrelates to the Construction Loan Contract under which the home was built, Mid Valley cannot properly be considered a "subsequent purchaser." We begin by addressing the potential applicability of the interrelated contracts doctrine.

## A. Entities That Were Nonexistent When the Contract Containing the Duty Was Formed Can Still Be Subject to the Interrelated Contracts Doctrine

¶ 11 Because Mid Valley's contractual connectedness to the Construction Loan Contract is essential to our holding that Mid Valley falls outside of the class of plaintiffs protected by the independent tort duty from *Cosmopolitan Homes*, we first address the question of whether an entity can still be subject to the interrelated contracts doctrine when that entity did not exist until the work was completed on the relevant duty-containing contracts. We conclude that it can.

¶ 12 When an entity is a party to a contract that is interrelated with a defendant's duty-containing contract—or is a third-party beneficiary thereof, as is the case here—the economic loss rule can bar that entity from suing the defendant in tort. "[W]hen the claimant seeks to remedy only an economic loss that arises from interrelated contracts," *BRW*, 99 P.3d at 72, the economic loss rule can prohibit tort suits by "third-party contract beneficiaries who may have a cause of action for breach of contractual duties," *Town of Alma*, 10 P.3d at 1264

n.12, so long as the contracting defendant owes no independent tort duty, *id.* at 1265.[6]

¶ 13 In this case, a close examination of contractual provisions indicates that Mid Valley was the intended third-party beneficiary of the Deed-in-Lieu such that it "may have a cause of action for breach of contractual duties," which potentially subjects Mid Valley to the interrelated contracts doctrine. *See id.* at 1264 n.12. Specifically, Clause Seven of the agreement recites this intent:

> *General Intent.* It is the *express intent* and understanding of the Parties to this Agreement that *Mid Valley Real Estate Solutions V, LLC shall become the immediate and absolute full fee owner of and have complete and indefensible title to the Real Estate Collateral and Personal Property* and that the Deeds of Trust will remain valid and enforceable liens on the Real Estate Collateral and that the Loan Documents will remain valid and enforceable liens on the Personal Property provided, however, that Guarantors shall be released from personal liability under the Loan Documents to the extent described in Paragraph 9. It is the intent of this Agreement that *Lender's rights and remedies as to any and all of the Real Estate Collateral and Personal Property shall not be compromised, released, modified, limited or impaired in any way.*

(Emphasis added.) Although the somewhat contradictory language of this provision leaves unclear what exactly Mid Valley receives,[7] the provision specifically acknowledges that the parties expressly intend to benefit Mid Valley directly by granting it some property interest in the Real Estate. Because a third-party beneficiary is a "person not a party to an express contract [who

6. To be clear, we do not hold here that third-party beneficiaries are the *only* class of nonparties who did not exist at the time the duty-containing contract was formed that may nonetheless be bound to enforce duties via contract claims under the economic loss rule. In the right circumstances, alter egos, assignees, and others who "stand in the shoes" of a contractual party that is bound by the economic loss rule could be similarly prohibited from suing in tort. These determinations, however, are not necessary to resolve this interlocutory appeal.

7. Clause Seven purports to assign fee simple ownership to Mid Valley while still leaving the deeds of trust as enforceable liens on the property. It is unclear how Alpine Bank would enforce its deed of trust against a property that Sun Mountain does not own in order to collect on the remaining Construction Loan Contract between Sun Mountain and Alpine Bank.

nevertheless] may bring an action on the contract if the parties to the agreement intended to benefit the [third party and if] ... the benefit claimed is a direct and not merely an incidental benefit of the contract," see *Parrish Chiropractic*, 874 P.2d at 1056, and Clause Seven expressly recites such intent, Mid Valley falls within the scope of the interrelated contracts doctrine insofar as the Deed-in-Lieu interrelates to the duties established in Petitioners' contracts with the general contractor.

¶ 14 Moreover, the Deed-in-Lieu is interrelated with the Construction Loan Contract between Alpine Bank and Sun Mountain despite Mid Valley's nonexistence at the time the Construction Loan Contract was formed. In fact, the Deed-in-Lieu is merely a modification of the Construction Loan Contract. Clause Seven—which releases the personal guarantors from liability under the Construction Loan Contract, but purports to keep all powers of enforcement from that contract intact against Sun Mountain—is simply one example of these contracts' interrelatedness. The Deed-in-Lieu also recites the history of the construction loans, refers to and incorporates provisions of the Construction Loan Contract throughout, and requires signatories to "ratify and confirm all the Loan Documents as modified by this agreement." Thus, the Deed-in-Lieu, of which Mid Valley is a third-party beneficiary, is clearly interrelated with the Construction Loan Contract.

¶ 15 While this much can be ascertained on the limited record before us, under the stringent standards required to grant a motion for summary judgment we cannot say definitively that the Construction Loan Contract interrelates with Petitioners' contracts, and so we must remand to the trial court to make that determination. What little record exists reveals significant factual disagreement regarding the extent to which Alpine Bank's rights under the Construction Loan Contract caused that contract to interrelate with Petitioners' contracts. Additionally, Petitioner S K Peightal's contract with the general con-

tractor was oral, and the question of whether that contract contained any duty or liability limitations is factual in nature and is not sufficiently developed on this sparse interlocutory record for us to definitively determine if the interrelated contracts doctrine applies.

■■■ ¶ 16 Therefore, our holding in this section is narrow and commensurate with the issue on which we granted review: An entity that did not exist at the time a duty was contractually created may still be subject to the interrelated contracts doctrine if that entity is a party to a contract that is sufficiently interrelated with the duty-creating contract or is a third-party beneficiary of such an interrelated contract.

¶ 17 We next consider whether, even if these contracts interrelate, the *Cosmopolitan Homes* independent tort duty extends to protect commercial entities in Mid Valley's position such that the economic loss rule would be inapplicable.

**B.  Subcontractors' Independent Duty in the Construction of Homes Does Not Extend to Mid Valley**

■■■■ ¶ 18 Even if Mid Valley would otherwise be bound by Petitioners' contracts through the interrelated contracts doctrine, the economic loss rule would not apply to bar Mid Valley's tort suit if Petitioners owe Mid Valley an independent tort duty of care. Although home builders (including subcontractors) generally owe an independent duty in the construction of homes under *Cosmopolitan Homes* such that homeowners can typically sue in tort for negligent construction, this duty is only owed to *subsequent* purchasers and transferees.[8] We must therefore determine whether Mid Valley—a third-party beneficiary of the Deed-in-Lieu, which is simply a modification of the Construction Loan Contract that facilitated the development of the home at issue—can be properly considered a "subsequent purchaser" as intended in *Cosmopolitan Homes*. We conclude that it cannot.

---

8. Although the seminal language creating this independent duty in *Cosmopolitan Homes* used the word "purchasers," as the court of appeals noted, the case "used 'home owner' and 'purchaser' interchangeably throughout the opinion."

*Mid Valley*, ¶ 30. Thus, although we use the term "purchaser" when we are directly quoting *Cosmopolitan Homes*, construction professionals also owe subsequent transferees this independent tort duty.

■ ¶ 19 Initially, we set about clarifying the precise meaning of "independent duty" in the context of the economic loss rule. When we adopted the economic loss rule in *Town of Alma,* we explained that "[a] breach of a duty *arising independently* of any contract duties between the parties . . . may support a tort action." 10 P.3d at 1262. In the context of the economic loss rule, an independent duty is not merely the potential existence of a tort duty owed to a foreseeable victim of a defendant's failure to take care; were that the case, the economic loss rule would have no practical significance because it would be inapplicable whenever a viable tort claim could be asserted. Rather, as we implied in *Grynberg v. Agri Tech, Inc.,* 10 P.3d 1267, 1269–71 (Colo. 2000), while thoroughly analyzing the economic loss rule's compatibility with our previous case law, there are actually two types of independent duties of care that can render the economic loss rule inapplicable.

■ ¶ 20 First, any general tort duty is independent of contractual duties if the contract contains no duties or the allegedly breached tort duty is beyond the scope of the duties contained within the contract at issue. *See id.* at 1270. In *Grynberg,* we explained that our holding in *Cooley v. Big Horn Harvestore Systems, Inc.,* 813 P.2d 736 (Colo. 1991), is compatible with the economic loss rule because the "exclusive remedy" portion of the contract at issue in that case "applied only to duties that were created by the contract," and the contract required only that the defendant "install a foundation and erect the superstructure." *Grynberg,* 10 P.3d at 1270. Hence, the economic loss rule did not bar a tort suit "based on an alleged breach of a *separate* duty of care arising from [the defendant's] conduct in providing advice and recommendations concerning adoption, modification or rejection of nutritional programs." *Id.* (internal quotation marks omitted). Thus, if a defendant's specific alleged duties are not governed by the contract, then those duties are independent of the contract and the economic loss rule cannot bar a tort suit for breach of those independent duties.

■ ¶ 21 Second—as is at issue here—certain "special relationships . . . automatically trigger independent duties of care." *Id.* at 1271 (citing attorney-client, physician-patient, and insurer-insured relationships as examples). Thus, the existence of a judicially recognized special independent duty will "support[ ] a tort action even though the parties [have] entered into a contractual relationship" and will render the economic loss rule inapplicable even if the relevant contracts contain the identical duty. *Id.*[9]

¶ 22 As is pertinent to this case, a construction professional's independent duty to act non-negligently in the construction of a home—first articulated in *Cosmopolitan Homes* and later confirmed and expanded to subcontractors in *A.C. Excavating*—falls into the second category of special judicially recognized independent duties. Crucially, the *Cosmopolitan Homes* duty is owed only to "subsequent home owner[s]."[10] 663 P.2d at

9. We note that in addressing the plaintiff's tort claim in *BRW,* we stated that "[i]f we conclude that the duty of care owed by [the defendants] was memorialized in the contracts, it follows that the plaintiff has not shown any duty independent of the interrelated contracts and the economic loss rule bars the tort claim and holds the parties to the contracts' terms." 99 P.3d at 74. Critically, however, we have never recognized the duty at issue in that case–involving licensed engineers' obligations to contractors and subcontractors in drafting and preparing plans and specifications–as a special independent tort duty. *See id.* at 71, 74. Thus, although in *BRW* we applied the proper test to determine whether a *general* tort duty is independent, this test does not apply when considering a *specially recognized* independent tort duty such as that established in *Cosmopolitan Homes.*

10. After deciding *Cosmopolitan Homes,* we decided *A.C. Excavating* without explicitly including the word "subsequent" when we determined that subcontractors owed the *Cosmopolitan Homes* independent tort duty. *See A.C. Excavating,* 114 P.3d at 865. In that case, however, we were considering only the scope of the class of defendants who owed the duty and not the class of plaintiffs to whom the duty was owed. *Id.* The plaintiff in *A.C. Excavating* was a homeowners' association and had no contractual connection to the contracts defining the defendants' duties, and was presumably representing natural homebuyers with no connection to the construction contracts. *Id.* at 864. Thus, since the plaintiff was a representative of "subsequent purchasers" and we did not consider this portion of the *Cosmopolitan Homes* independent tort duty, *A.C. Excavating* comports with our holding here both factually and jurisprudentially.

1042. We must therefore determine whether parties such as Mid Valley—that is, parties or third-party beneficiaries that receive a home through a commercially negotiated contract that interrelates to the contract that facilitated the home's construction—can be properly categorized as "subsequent home owner[s]" as was intended in *Cosmopolitan Homes*.

¶ 23 In *Cosmopolitan Homes*, we considered whether the court of appeals properly allowed "subsequent purchasers of a home to assert a claim for property damage to the structure allegedly caused by the negligence of the homebuilder." *Id*. The trial court dismissed the plaintiffs' complaint because "there was no privity of contract between the [parties] because the [plaintiffs] were not the first purchasers or users of the house." *Id*. Based on careful consideration of our precedent and public policy implications, we recognized that construction professionals owe an independent duty to act non-negligently in the construction of a home, but we limited this duty so as to allow only "*subsequent* home owner[s] to maintain an action against a builder." *Id*. (emphasis added); *see also Town of Alma*, 10 P.3d at 1265–66 (affirming that the "independent duty to act without negligence in the construction of a home" was recognized to protect the class of "subsequent purchasers"). Thus, since we have determined that Mid Valley has contractually enforceable rights as a third-party beneficiary under the Deed-in-Lieu and that the Deed-in-Lieu is clearly interrelated to the Construction Loan Contract, the remaining question is whether a party who stands in the shoes of one of the parties to a Construction Loan Contract that financed the construction of the home in question can properly be considered a subsequent homeowner of the property.

¶ 24 We hold that parties in Mid Valley's situation are not subsequent homeowners as was intended in *Cosmopolitan Homes* and thus that construction professionals do not owe an independent duty to this class of parties under *Cosmopolitan Homes*. Unlike the plaintiffs in *Cosmopolitan Homes*, who had their complaint originally dismissed for lack of privity and lacked alternate legal avenues to enforce their rights, Mid Valley here may enforce the Deed-in-Lieu as a third-party beneficiary thereof, and the Deed-in-Lieu preserves Alpine Bank's enforcement rights against Sun Mountain from the Construction Loan Contract, which was the very contract that facilitated the construction of the home. Furthermore, the satisfaction of obligations under these two contracts was the sole reason that Mid Valley came to own the property. Alpine Bank, in turn, could and did negotiate for significant protections under the Construction Loan Contract, including: the right to inspect and approve subcontractors' contracts related to the project; the right to request that Sun Mountain furnish "a soil report for the Property in form and substance satisfactory to [Alpine Bank], prepared by a registered engineer satisfactory to [Alpine Bank]"; and the right to perform inspections upon the property throughout the project. Thus, Alpine Bank had the right to inspect and approve the contracts between Sun Mountain and Petitioners. Even if Petitioners' contracts were formed before the Construction Loan Contract, Alpine Bank could have inspected these contracts and required Sun Mountain to obtain new soil reports under a contract more to its liking if it objected to the terms of Petitioners' contracts. It did not. Finally, as a third-party beneficiary of the Deed-in-Lieu, Mid Valley was free to sue Sun Mountain for breach of that contract or the interrelated Construction Loan Contract under the terms for which Alpine Bank negotiated over the course of this contractual relationship. *See Town of Alma*, 10 P.3d at 1264 n.12 ("A basic rule of contract law is that a person not a party to an express contract may bring an action on such contract if the parties to the agreement intended to benefit the non-party, provided that the benefit claim is a direct and not merely an incidental benefit of the contract." (internal quotation marks omitted)). Therefore, as a third-party beneficiary of a commercial entity that negotiated at arm's length a Construction Loan Contract outlining the parties' duties and liabilities during the construction of a home, Mid Valley does not qualify as a

subsequent homeowner as contemplated in *Cosmopolitan Homes* and is not a member of the class to which this special independent duty is owed.[11]

¶ 25 Importantly, we do not hold that parties like Mid Valley could be without recourse. While the independent duty established in *Cosmopolitan Homes* does not provide Mid Valley with an exception to the economic loss rule, it remains to be determined by the trial court whether the Construction Loan Contract is sufficiently interrelated to Petitioners' contracts, whether Petitioner S K Peightal's oral contract contained a duty, and whether Petitioners' duties (if any) under their respective contracts were the same as their general tort duties such that the economic loss rule would bar Mid Valley from suing in tort. If yes to all, then Mid Valley may sue for breach of contract but not in tort. If no to any, then Mid Valley will be able to assert at least some general tort claims as appropriate within the strictures of this opinion.

**11.** The court of appeals performed a thorough analysis on the broader question of whether commercial entities in general should be protected by the independent tort duty established in *Cosmopolitan Homes*, and it concluded that the duty is owed to both commercial and natural homeowners. *Mid Valley*, ¶¶ 24–51. Because we de-

## IV. Conclusion

¶ 26 Responding narrowly to the issues before us on interlocutory appeal as they relate to the specific facts of this case, we hold that (1) entities that did not exist at the time work was completed on the relevant duty-containing contracts can still be subject to the interrelated contracts doctrine; and (2) parties in Mid Valley's situation are not "subsequent" purchasers or homeowners as intended in *Cosmopolitan Homes* and are not protected under that independent tort duty. Because the court of appeals erroneously held that the special independent duty from *Cosmopolitan Homes* extends to protect Mid Valley, we reverse that judgment and remand the case to the court of appeals to return to the trial court for further proceedings consistent with this opinion.

termine that Mid Valley does not qualify as a *subsequent* homeowner as intended in *Cosmopolitan Homes*, we need not determine whether this independent tort duty–which was created to protect natural persons–extends to protect commercial entities who would qualify as subsequent homeowners.